**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Dry Enterprises, Inc., et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| vs. | ) | No. 07 C 1657 |
| | ) | |
| Sunjut AS, et al., | ) | Judge Kendall |
| | ) | |
| *Defendants.* | ) | Magistrate Judge Cole |
| | ) | |
| | ) | |
| Sunjut AS, et al., | ) | |
| | ) | |
| *Counter-Plaintiffs,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Dry Enterprises, Inc., et al., | ) | |
| | ) | |
| *Counter-Defendants.* | ) | |

**COUNTER-DEFENDANTS' RESPONSE IN OPPOSITION TO
SUNJUT'S MOTION FOR PRELIMINARY INJUNCTION**

Counter-Defendants Steven E. Dry, Preston Dry, Sunpack Pacific LLC, Dry Enterprises, Inc., and Hakan Hazneci (collectively "Dry") hereby file their opposition (the "Response") to Sunjut's Motion For Preliminary Injunction (the "Motion"), and respectfully state as follows:

**I.      Sunjut's Motion Fails Because It Impermissibly Seeks a Mandatory Preliminary Injunction Upon an *Unclear* Record of *Disputed* Facts**

In its Motion, Sunjut inappropriately seeks not simply an injunction, but rather a *mandatory preliminary* injunction from this Court.[1]  While mandatory injunctions "are rarely

---

[1] "[A] mandatory injunction is similar to a mandamus in all essential respects." Gary Jt. Venture v. Friendly Ice Cream Corp., 1987 U.S. Dist. LEXIS 5351, at *12 (N.D. Ill. June 15, 1987) (Leighton, J.).  It "orders the defendant to perform some positive act [and] should issue only in exceptional circumstances and where the rights of the parties are entirely clear. . . .  [A] mandatory injunction is an extraordinary remedial process resorted to usually for the purpose of effectuating full and complete justice[.]" Standberry v. Color, 1987 U.S. Dist. LEXIS 3965, at *33 (N.D. Ill. May 14, 1987) (Leighton, J.) (citing Jordan v. Wolke, 593 F.2d 772, 774 (7th Cir. 1979) and denying mandatory preliminary injunction).

issued," the Seventh Circuit has expressly cautioned that "*interlocutory mandatory injunctions are even more rarely issued*, and neither *except upon the clearest equitable grounds*." W.A. Mack, Inc. v. GMC, 260 F.2d 886, 890 (7th Cir. 1958) (emphasis added); see, e.g., Graham v. Medical Mut. of Ohio, 130 F.3d 293, 295 (7th Cir. 1997) (denying mandatory preliminary injunction and observing that such injunctions are "cautiously viewed and sparingly issued"). "Mandatory preliminary relief, which goes well beyond simply maintaining the status quo Pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1979).

Such relief "must be denied where the application and affidavits reveal that a plaintiff's contentions as to issues of fact and law are seriously disputed." Borden v. Kraft, 1984 U.S. Dist. LEXIS 23179, at *50-*51 (N.D. Ill. Sept. 28, 1984) (Leighton, J.) (denying mandatory preliminary injunction where plaintiff's factual contention and legal arguments "are all, at the very least, in dispute, if not fully refuted by defendant"); see, e.g., Redevelopment Ag. of Stockton v. Burlington N. & Santa Fe Ry. Corp., 2006 U.S. Dist. LEXIS 18319, at *14 (E.D. Cal. Apr. 11, 2006) ("Ultimately, the question whether defendants were responsible parties hinges on questions of fact that cannot be resolved on this spare record. For these reasons, while the Agency has raised serious questions, it has not demonstrated a likelihood of success on the merits sufficient to warrant a mandatory injunction."); Carter v. Fagin, 363 F. Supp. 2d 661, 666 (S.D. N.Y. 2005) ("Because the facts . . . are hotly contested, I cannot say that plaintiff has shown the 'clear right to relief' required for the issuance of a mandatory injunction[.]").

Sunjut's Motion should be denied because it: (a) seeks the mandatory injunctive relief of requiring Dry to affirmatively (i) halt sales to its customers, (ii) remit monies to Sunjut, and (iii) "require Counter-Defendants to take all steps necessary to reverse the effect of their actions, including notifying the customers and returning diverted payments," Motion, p. 6—effectively providing Sunjut with full and final relief at a preliminary stage of these proceedings,[2] (b) where the record in this case contains dueling affidavits, and (c) where Dry disputes and has fully refuted Sunjut's key factual and legal contentions, as later discussed herein and pursuant to the

---

[2] Sunjut also seeks to prevent Dry's "continued use of the 'Sunpack Pacific' name and the sunpackpacific.com domain name and website[.]" Mot., pp. 5-6. However, at page 31, subsection (i), of the Counterclaims Of Sunjut As, Sunjut USA And Metin Levi (the "Counterclaims"), Sunjut more specifically requests that the Court "[o]rder Counter Defendants to immediately transfer the domain name 'sunpackpacific.com' to Counter Plaintiffs[.]"

-2-

exhibits to this Response.  Based upon the foregoing authority, Dry respectfully requests that the Court deny Sunjut's Motion.

## II.  Sunjut's Motion Otherwise Fails the Burden for Preliminary Injunctive Relief

### A.  Applicable Legal Standard

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138 L. Ed. 2d 162 (1997) (citations omitted);  see Roland Mach. Co. v. Dresser Indus. Inc., 749 F.2d 380, 389 (7th Cir. 1984).

To obtain a preliminary injunction, a plaintiff must clearly establish:  (1) that it will be irreparably harmed in the absence of a preliminary injunction, (2) that the threatened injury to the plaintiff outweighs the harm an injunction may inflict upon the defendant, (3) that the plaintiff has at least a reasonable likelihood of success on the merits, and (4) that granting a preliminary injunction will not disserve, or harm, the public interest.  See Goodman v. Illinois Dep't of Fin. & Prof'l Reg., 430 F.3d 432, 437 (7th Cir. 2005);  Schwinn Bicycle Co. v. Ross Bicycles, Inc., 870 F.2d 1176, 1181 (7th Cir. 1989).

The movant must "carry the burden of persuasion *as to all four factors.*"  Signode Corp. v. Weld-Loc Sys., Inc., 700 F.2d 1108, 1111 (7th Cir. 1983) (emphasis added);  see Cox. v. City of Chicago, 868 F.2d 217, 223 (7th Cir. 1989) ("If a plaintiff fails to meet just one of the prerequisites for a preliminary injunction, the injunction must be denied.");  Global Relief Found., Inc. v. O'Neill, 207 F. Supp. 2d 779, 809 (N.D. Ill.) (Andersen, J.), aff'd, 315 F.3d 748 (7th Cir. 2002), cert. denied sub nom. Global Relief Found., Inc. v. Snow, 540 U.S. 1003, 124   S. Ct. 531, 157 L. Ed. 2d 408 (2003);  see, e.g., Adams v. City of Chicago, 135 F.3d 1150, 1154 (7th Cir. 1998) ("The district court [ ] found that the plaintiffs would not be irreparably injured . . . .  Because we agree with this conclusion, and *because this alone precludes the issuing of the preliminary injunction*, we need not reach the question of the plaintiffs' likelihood of success on the merits.") (emphasis added).

### B.  Sunjut's Delay in Pursuing an Injunction Warrants Denial of the Motion

#### 1.  Laches

The burden is on Sunjut, "as the party seeking affirmative judicial relief from this court, to show at the threshold that it has come to equity with clean hands."  Great W. Cities, Inc. v.

-3-

Binstein, 476 F. Supp. 827, 833 (N.D. Ill. 1979) (Bua, J.). Dry respectfully submits that Sunjut has not met this threshold burden.

In this connection, but not alone in this connection, Sunjut has tarried by over eight (8) years in seeking its requested relief. Dry Enterprises used the name "Sunpack" exclusively in its business operations from 1999 until approximately January 2007. (Dry Decl., ¶19). Sunjut and Sunjut USA were aware of Dry's use of the "Sunpack" name. In fact, Hazneci, who worked for Sunjut USA during that time, assisted Dry in creating a logo designed for Sunpack, and assisted Dry in printing the first batch of letterhead with that logo. Thereafter, Dry printed all of its own letterhead, envelopes, and business cards, all containing the Sunpack logo and all for the exclusive use of Dry. Every transaction conducted by Dry was conducted under the Sunpack name. (Dry Decl., ¶21). Dry had also requested, and Sunjut agreed, to place the Sunpack logo on all Sunjut FIBCs ordered by Dry's customers. Furthermore, Sunjut USA billed only Dry's customers under the Sunpack name and even referred internally to Dry as Sunpack.

Additionally, during the time period that Dry used the Sunpack name, Dry purchased non-Sunjut FIBCs from several companies, including: (1) Grupo Polinal located in Mexico; (2) Hartley located in Atlanta, Gorgia; (3) Terra Bulk Bags located in Ft Lauderdale, Florida; and (4) Farber Bag located in Peosta, Iowa. Dry sold other manufacturer's FIBCs to Dry's customers and invoiced those customers using the "Sunpack" name. (Dry Decl., ¶22). It was not until Steve Dry suggested changing Sunjut Pacific's name to Sunpack Pacific in August 2006 that Levi first objected to the use of name "Sunpack"

Sunjut's delay, in concert with which Dry continued its business and sales, as described, subjects the Motion to laches. "The application of laches in a particular case is dependent upon a showing of an unreasonable lack of diligence by the party against whom the defense is asserted and prejudice arising from this lack of diligence." Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 822 (7th Cir. 1999). Sunjut's delay in this case thoroughly undermines the credibility of any claim of urgency to its requested relief. Case law is replete with analogous situations of such undue delay, in which "irreparable harm" was not found and injunctive relief was denied on the basis of laches. See, e.g., Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc., 2002 U.S. Dist. LEXIS 26774, at *31 (N.D. Ill. Sept. 27, 2002) (Bobrick, J.) ("In this case, it is especially important to recall that delay in pursuing a preliminary injunction may raise questions regarding a claim of inadequate legal remedy or irreparable harm. . . . As already discussed, the

-4-

copyright owners did nothing *for nine months* . . . .  Certainly, if the injury alleged in this litigation were truly irreparable and legal remedies were inadequate, [defendant]'s substantial undertaking would have been thwarted by litigation almost immediately.  Such was simply not the case.") (emphasis added); Borden, 1984 U.S. Dist. LEXIS 23179, at *45 ("Borden was aware of Kraft's television commercials at least as early as January 1984, *well over five months ago*.  The parties negotiated from time to time during this period. . . .  Although Borden could have filed this action in January, it . . . sat on its alleged rights for several months . . . .  Plaintiff's right to preliminary injunctive relief is therefore barred by laches.").  Based upon the facts as described, Dry respectfully requests that the Court deny the Motion upon the basis of laches.

### 2.    Lack of Irreparable Harm

Even assuming arguendo that Sunjut's delay were not subject to laches, and Dry respectfully submits that it is, Sunjut's delay is still more than sufficient to repudiate any claim of irreparable harm and, thus, any eligibility it might claim to preliminary injunctive relief.  In this sense, "[d]elay  . . . is still a factor to be considered," in the following respects:

> To the extent the urgency created by the delay prevents the evidence from being adequately developed, the weakness in the evidence or failure to make an adequate showing of a likelihood of success or irreparable harm will be held against the movant.  Additionally, the delay may be considered in balancing the hardships.  Also, delay in pursuing relief undercuts claims of irreparable harm and *may be considered as circumstantial evidence that the potential harm to plaintiff is not irreparable or as great as claimed*.

Fenje v. Feld, 2002 U.S. Dist. LEXIS 9492, at *5-*6 (N.D. Ill. May 29, 2002) (Hart, J.) (citations omitted and emphasis added).  The principle is that a plaintiff's extended delay in seeking relief undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and indicates that there is, in fact, no irreparable injury.

Accordingly, delay may still prove fatal to the tardy movant, and should to Sunjut.  As described by Dry, Sunjut has waited years to redress its alleged harms.  Additionally, Sunpack has itself acknowledged sufficient delay to warrant denial of its Motion.  In its Motion, it states:

(1)    that it moves "for a preliminary injunction against Counter-Defendants' . . . (c) continued sales by Counter-Defendants to customers whose sales they diverted in 2006 from Sunpack/Sunjut USA to Pacific LLC," Mot., p. 1;

-5-

(2)     "Since at least January 5, 2007, Counter-Defendants have used the name 'Sunpack Pacific LLC' as their corporate name without permission and over the objections by Sunjut . . . .," <u>id.</u>, p. 4 at ¶ 8(a);

(3)     "Counter-Defendants submitted an application for the trademark on Sunpack Pacific on September 15, 2006 without permission and over the objections by Sunjut," <u>id.</u> at ¶ 8(b);  and

(4)     "Counter-Defendants submitted an application for the sunpackpacific.com domain name and website on October 30, 2006 without permission and have used it as a website over objections of Sunjut[,]" <u>id.</u> at ¶ 8(c).

By comparison, Sunjut's Motion was brought in June 2007.

A delay like Sunjut's—either as described by Dry or Sunjut—is sufficient, in and of itself, to obviate any claimed need for preliminary injunctive relief.  <u>See, e.g.</u>, <u>Shaffer v. Globe Protection, Inc.</u>, 721 F.2d 1121, 1123 (7th Cir. 1983) ("The court did not abuse its discretion in failing to grant Ms. Shaffer injunctive relief. . . . [P]laintiff has made no serious attempt to press her claim for injunctive relief, *waiting two months* after the December 9 denial of class action to make the request in question here.  Such a delay is inconsistent with a claim of irreparable injury.") (emphasis added);  <u>MB Fin. Bank, N.A. v. MB Real Estate Servs., L.L.C.</u>, 2003 U.S. Dist. LEXIS 21051, at *23-*24 (N.D. Ill. Nov. 21, 2003) (Der-Yeghiayan, J.) ("Bank admits that it learned of Real Estate's name change to its current form in January of 2002.  However, Bank did not contact Real Estate regarding the 'MB' mark until March of 2002.  No cease and desist letters had been sent in the interim.  Bank did not file the suit until August 20, 2002, and Bank did not file the motion for preliminary injunction until October 8, 2002.  These delays are inconsistent with Bank's assertions that it faces irreparable harm.  *While the delays should not impede Bank's ability to pursue its claim, they do support a finding that Bank is not entitled to the extraordinary relief of a preliminary injunction*.") (emphasis added);  <u>Boczar v. Kingen</u>, 1999 U.S. Dist. LEXIS 22079, at *37 (S.D. Ind. July 2, 1999) ("[T]he stop-work order was issued and the permits were revoked in November 1998.  The Plaintiffs, however, *waited until February 1999 to commence this action and waited until May 1999 before seeking a preliminary injunction*.  The Plaintiffs' own inaction or delayed action in seeking a preliminary injunction repudiates their claims of irreparable injury.") (emphasis added);  <u>Ohio Art Co. v. Lewis Galoob Toys, Inc.</u>, 799 F. Supp. 870, 887 (N.D. Ill. 1992) (Shadur, J.) ("It can be inferred from

-6-

plaintiff's delay that there is no threat of irreparable harm."); Stokely-Van Camp, Inc. v. Coca-Cola Co., 1987 U.S. Dist. LEXIS 781, at *7-*8 (N.D. Ill. Jan. 30, 1987) (Leinenweber, J.) ("[I]n May Stokely know that Coke was about to introduce a product by the same name. . . . *Stokely chose to wait three months* before filing suit while Coke was spending substantial amounts to market its product.  Although this is too short of a time for the equitable doctrine of laches to apply, the fact that Stokely waited three months indicates a lack of a need for the extraordinary remedy of a preliminary injunction. . . . In such a situation the preliminary injunction should be denied and no further analysis is needed.") (emphasis added).

Under the authority cited, Dry respectfully requests that the Court deny Sunjut's Motion.

### C.     Because Sunjut's Alleged Injuries Are Not "Irreparable" Sunjut Is Ineligible for the "Extraordinary and Drastic Remedy" of a Preliminary Injunction

"To obtain a preliminary injunction, plaintiff must show that it has no adequate remedy at law and, as a result, that it will suffer irreparable harm if the injunction is not issued. . . . The finding of irreparable harm to the plaintiff if the injunction is denied is a threshold requirement for granting a preliminary injunction." FoodComm Int'l v. Barry, 328 F.3d 300, 304 (7th Cir. 2003).  "If the moving party cannot make this showing, a court's inquiry is over and the injunction must be denied." East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co., 414 F.3d 700, 703 (7th Cir. 2005); see Borden, 1984 U.S. Dist. LEXIS 23179, at *45 ("[A] failure to demonstrate irreparable harm is of itself fatal to an application for an injunction.").

In this connection, "[a]n injury compensable in money is not 'irreparable', so an injunction is unavailable." Classic Components Supply, Inc. v. Mitsubishi Elec. Am., Inc., 841 F.2d 163, 164-65 (7th Cir. 1988); see Signode Corp., 700 F.2d at 1111 (same); see, e.g., Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co., 255 F.3d 460, 463 (7th Cir. 2001) ("[The movant's] losses are purely financial, easily measured, and readily compensated.  There is no showing of irreparable harm, and on this ground alone the preliminary injunction should have been denied."); Ameritech v. Voices for Choices, Inc., 2003 U.S. Dist. LEXIS 8023, at *6-*7 (N.D. Ill. May 12, 2003) (Kocoras, J.) (same).  Moreover, the burden of proof lies with the plaintiff "to demonstrate that its claimed injury cannot be compensated for in money damages." Borden, 1984 U.S. Dist. LEXIS 23179, at *48.

The rule applies with even greater force where plaintiffs "place a monetary value on their alleged injuries," and thereby, *themselves* provide "evidence" that they have an adequate remedy

-7-

at law.[3] Lancaster Found., Inc. v. Skolnick, 1992 U.S. Dist. LEXIS 12612, at *13-*14 (N.D. Ill. Aug. 21, 1992) (Kocoras, J.); see R.D. Smith & Co. v. Preway, Inc., 644 F. Supp. 868, 872 (W.D. Wis. 1986) ("Where damages can be measured, equitable relief is not required.").

In some respects, however, Sunjut has already provided its own figures. For instance, at Paragraph 111 of its Counterclaims, Sunjut alleges that: "The removal of Sunjut permits Pacific LLC to retain and benefit from the technology and know-how in the business of manufacturing and selling FIBC's [sic] which is [sic] valued at $150,000 in the Operating Agreement." Having an adequate remedy at law, Sunjut is not entitled to seek one in equity. Accordingly, and upon the foregoing bases, Dry respectfully requests that the Court deny Sunjut's Motion.

### D. Sunjut Fails to Demonstrate It Has A Reasonable Likelihood of Succedd on the Merits of Its Tortious Interference and Fiduciary Duty Claims

Sunjut's motion for preliminary injunction fails for the additional reason that Sunjut does not demonstrate that it has even a reasonable likelihood of succeeding on its tortious interference or fiduciary duty claims.

Sunjut's tortious interference claim is premised upon the allegation that Dry prevented it from receiving payments from customers. In its brief, Sunjut does not even reference the requirements for proving a claim for tortious interference with contract. Had it done so, it would have become clear that Sunjut cannot prevail on such a claim under any of the facts alleged. In order to state a claim for tortious interference with contract, Sunjut must plead and prove (1) the existence of a contract; (2) the defendant's awareness of the contract; (3) the intentional inducement of a contract breach; (4) an actual breach of the contract; and (5) damages. Cody v. Harris, 409 f.3d 853, 859 (7th Cir. 2005).

Here, Sunjut does not even suggest that it can prove any of these elements of its claim. Indeed, Sunjut cannot prove that Dry intentionally induced a contract breach or that Dry's

---

[3] The relief Sunjut seeks in its Motion—concerning, among other things, "payments by customers for Sunpack/Sunjut USA," and "continued sales by Counter-Defendants to customers," coupled with "returning diverted payments"—is monetarily compensable. Were it necessary, a monetary amount could be calculated for the same. See, e.g., Motorola, Inc. v. D&B Holding Co., 2002 U.S. Dist. LEXIS 13240, at *66 (N.D. Ill. July 22, 2002) (Mason, J.) (holding that the plaintiff did not prove the inadequacy of money damages because "the question of damages is simply a matter of assigning a license value to [plaintiff's lost] sales"); Fisher Inv., Inc. v. Carlson, 2004 U.S. Dist. LEXIS 22060, at *9 (N.D. Ill. Nov. 2, 2004) (Bucklo, J.) ("[M]onetary damages will be adequate to compensate [defendant] for the loss of any clients that may result, even if [defendant] is not able to precisely calculate its losses").

customers actually breached the terms of any agreement they had with Sunjut. As set forth in Dry's Declaration, Sunjut itself caused the payments to be sent to Sunpack Pacific after Sunjut unilaterally changed the terms of its billing procedures. (Dry Decl. ¶ 75-80, 88). Dry's customers did not know where to remit payment since Sunjut was not a recognized vendor. Moreover, Sunjut cannot prove it suffered any damages. Although Dry received some checks since March 2007 from its customers where a portion of the monies are payable to Sunjut, Dry promptly issued checks to Sunjut USA for any and all amounts owed to Sunjut USA. (Dry Decl. ¶ 91). Currently, Dry possesses no monies in that are due and owing to Sunjut and Dry does not expect to receive any further monies owed to Sunjut. (Dry Decl. ¶ 92). For these reasons alone, Sunjut's request for a preliminary injunction must fail.

Additionally, through its Fiduciary Duty claim, Sunjut is attempting to prevent Dry from conducting business with those customers that Dry has been servicing and selling to as a distributor for years. Sunjut does not allege that Dry has violated any non-competition or non-solicitation agreement. Rather, Sunjut is attempting to prevent competition in the FIBC marketplace by alleging that Dry owed fiduciary duties to not solicit or compete with Sunjut. There is absolutely no legal basis for preventing Dry from selling any manufactures FIBCs to any customers. Indeed, that is the purpose for which Sunpack Pacific was established.

Sunjut's entire argument is based upon the mistaken belief that Dry was a sales representative of Sunjut. As set forth fully in Dry's declaration, Dry never acted as a sales representative for Sunjut. At all times, Dry was a distributor for Sunjut as well as other manufacturers of FIBCs. As a result, Sunjut's entire claim must necessarily fail.

## III. Additional Bases Support the Conclusion that Sunjut Has Failed to Meet Its Burden in Seeking a Preliminary Injunction as to the SUNPACK Name

Sunjut has failed to demonstrate any entitlement to a preliminary injunction preventing Dry from using the SUNPACK trademark. Accordingly, and upon all of the bases previously discussed herein, Sunjut's request for a preliminary injunction as to the SUNPACK trademark must be denied.

### A. Sunjut's Request for an Injunction Concerning the Trademark Should Be Denied Because Sunjut Effectively Ignored, and Failed to Establish, Three of the Four Requisite Factors to Preliminary Injunctive Relief

Sunjut failed to meet its burden because it *presented absolutely no evidence or argument* demonstrating that: (1) Sunjut will be irreparably harmed if Dry continues to use the SUNPACK

-9-

trademark; (2) the alleged harm Dry has caused Sunjut by its alleged trademark infringement outweighs the harm an injunction may inflict upon Dry; or (3) granting a preliminary injunction will not disserve, or harm, the public interest. Because Sunjut failed to establish these factors, the Court should deny Sunjut's request for a preliminary injunction concerning the SUNPACK trademark. As to the sole factor that Sunjut did address, Sunjut fails again to meet its burden.

### B. Sunjut Has Failed to Demonstrate That It Has a Reasonable Likelihood of Success on the Merits

In order to meet its burden of proving a likelihood of success on the merits, a movant must demonstrate: (1) that it owns a valid trademark, and (2) infringement of the mark. Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc., 149 F.3d 722, 726 (7th Cir. 1998). Sunjut fails to meet this burden because: (1) it does not own the SUNPACK trademark, Dry does, and (2) Dry's ownership of the trademark obviates Sunjut's claim of infringement. Dry has compelling evidence that it owns superior, if not exclusive, rights to the trademark—that is, Dry's first use of the SUNPACK word, and Dry's goodwill associated with SUNPACK.

Dry Enterprises began using the SUNPACK mark in connection with the sale of Flexible Intermediate Bulk Containers ("FIBCs") in 1999, and has since been using the trademark exclusively for over eight years. (Dry Dec. ¶ ). In 1999, Dry entered an arrangement with Sunjut under which: (1) Dry distributed FIBCs manufactured by Sunjut, and (2) Sunjut produced FIBCs for Dry's customers under an exclusive private label. (Dry Dec. ¶ ). Although Sunjut USA's corporate name has been Sun-Pack Corporation since 1997, it has not historically used the SUN-PACK corporate name or had any significant direct dealings with customers or trade organizations using that name. (Dry Dec. ¶ ). Indeed, Sunjut's Counterclaim avers that Sun-Pack Corporation does business as Sunjut USA.

### 1. Dry Enterprises Owns the SUNPACK Trademark

Dry has produced evidence that it first used the mark in the sale of FIBCs in 1999. It is axiomatic in trademark law that the standard test of ownership is priority of use. Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217,1219 (9th Cir. 1996). To acquire ownership of a trademark, it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to *actually use the mark* in the sale of goods or services. Id. (citng J. Thomas McCarthy, 2 McCarthy on Trademarks and Unfair Competition § 16.03 (3d ed. 1996)) (herenafter "McCarthy").

-10-

Sunjut's evidence of use prior to 1999 is limited to: (1) its manufacturing of FIBCs sold to, and distributed by, Dry to its customers, and (2) its Turkish registration of the word "SUNPAK" in 1996. The Supreme Court, however, has long held that a party need not itself manufacture the goods in order to acquire valid trademark rights in the marks affixed to the goods. See Menendez v. Holt, 128 U.S. 514, 521 (1888). An exclusive distributor may acquire trademark rights superior to those of the manufacturer if it was the first user of the mark in commerce. Omega Nutrition U.S.A., Inc. v. Spectrum Mktg., Inc., 756 F. Supp. 435, 438 (N.D. Cal. 1991). In fact, the distributor's use of a trademark automatically inures to the manufacturer of the product *only* when the manufacturer is the original owner of the mark. Id. Here, Dry is the original owner of the mark. Dry was the first party to use the mark in commerce in the sale of FIBCs. In addition, Dry built the goodwill in the mark and is solely associated with the mark through its extensive advertising and participation in countless trade shows and conferences.

On the other hand, Sunjut offers no evidence showing that its association with—or "use"—of the SUNPACK trademark for the past eight years was for Sunjut's own benefit, as it claims. All of the relevant factors compel the conclusion that Dry is the exclusive owner of the SUNPACK trademark.

### a.      Dry First Used the SUNPACK Mark in Commerce

Sunjut's use of the word "Sun-Pack" was limited to the name filed with the Illinois Secretary of State for the entity that Sunjut admits does business as Sunjut USA. Even in a light most favorable to Sunjut, its use of the word "Sun-Pack" was at most a trade name. Dry was the first to use the SUNPACK mark in commerce *as a trademark*. These terms are legally distinct:

> Trade names symbolize the reputation of a business as a whole. In contrast, trademarks and service marks are designed to identify and distinguish a company's goods and services…The major legal distinction between trademarks and trade names is that trade names cannot be registered and . . . protected[.]

Accuride Int'l, Inc. v. Accuride Corp., 871 F.2d 1531, 1534 (9th Cir. 1989). Sunjut has offered no proof that it sold FIBCs under the SUNPACK mark prior to Dry Enterprises' first use of the mark in the sale of goods in 1997.

Assuming that Sunjut's Turkish registration of "SUNPAK" is valid, this does not establish first use of the SUNPACK trademark in the United States (or elsewhere). Under the Lanham Act, the term "use in commerce" means:

-11-

the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark.  For purposes of this chapter, a mark shall be deemed to be in use in commerce- (1) on goods when- (A) it is placed in any manner on the goods or 24 their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce….

15 U.S.C. § 1127.

Dry used the SUNPACK mark in commerce by first labeling the FIBCs produced by Sunjut.  In addition, Dry:  (1) sent purchase orders to its customers that bore its address and the name SUNPACK;  (2) distributed promotional materials with SUNPACK affixed thereto to its customers and potential customers;  (3) used SUNPACK letterhead with Dry's address in correspondence with customers and potential customers.  Further, as a special accommodation for Dry, Sunjut's invoices bore the name SUNPACK.  (Cinar Dec. ¶21).  In contrast, Sunjut never labeled any FIBCs sold to other distributors or customers with the SUNPACK word or design mark.[4]  (Cinar Dec. ¶21).

However, even if the Court found that the Turkish trademark registration was entitled to some weight, the law is clear that "while registrations may be *prima facie* evidence of ownership, the mere fact that a party registers its copyrights or trademarks does not create substantive ownership rights in the registrant.  Rather, . . . trademark rights attach based upon use of the mark in commerce and registration provides no additional substantive rights against infringement . . . .  [R]egistrations merely offer evidence of ownership, and that showing need not be dispositive of the matter if contrary proof is available." Blue Planet Software, Inc. v. Games Int'l, LLC, 334 F. Supp. 2d 425, 436-37 (S.D. N.Y. 2004) (citations omitted).

The purported Turkish registration is also meaningless because Sunjut never used the SUNPAK mark in the United States.  See Tactica Int'l v. Atl. Horizon Int'l, 154 F. Supp. 2d 586,

---

[4] Moreover, the evidence offered by Sunjut, purporting to establish that it holds a Turkish trademark registration of "SUNPAK," should be accorded no weight.  First, the evidence submitted appears to simply come from a private database;  it does not appear to derive from a governmental source, is not a certificate of registration, has not been certified by any governmental agency, and has not been translated into English for review by this Court and these parties.  Second, at the time Dry began to use the SUNPACK trademark, Sunjut had not registered "SUNPAK" with the U.S. Patent and Trademark Office (USPTO).  Consequently, Sunjut has the burden of establishing that it is entitled to trademark protection under the Lanham Act.  Platinum Home Mortgage Corp, 149 F.3d at 727.

599 (S.D.N.Y. 2001) ("It is well settled that foreign use of a trademark cannot form the basis for establishing priority in the United States."). In order to constitute use in American commerce sufficient to support a federal registration, the mark must be affixed to the goods. See McCarthy, at §16:28. Dry was the first party to sell FIBCs with the SUNPACK word and design marks.

### b.      Other Factors Dictate that Dry Owns the SUNPACK Mark

Where a trademark indicates a distributor, rather than maker, of merchandise, the distributor acquires trademark rights, for the public associates the goods with it, not knowing the identity of the maker. Tactica Int'l, 154 F. Supp. 2d at 601. Absent a contractual provision for ownership of a trademark in a manufacturer-dealer dispute, a court will weigh factors such as:

> (1) which party invented and first affixed the mark onto the product; (2) which party's name appeared with the trademark; (3) which party maintained the quality and uniformity of the product; and (4) with which party the public identified the product and to whom purchasers made complaints.

Sengoku Works Ltd., 96 F.3d at 1220. In addition, courts will consider which party possesses the goodwill associated with the product, or which party the public believes stands behind the product. Id.; see also McCarthy, at §16:48; Omega Nutrition, 756 F. Supp. at 438-39. The answer to each of these questions is Dry.

In Omega Nutrition U.S.A., Inc. v. Spectrum Marketing, Inc., 756 F. Supp.435 (N.D. Cal. 1991), a dispute between a manufacturer and a distributor over ownership of a trademark arose and the distributor prevailed. the plaintiff manufactured flaxseed oil that was distributed by defendant. The court granted the defendant an injunction, finding a probability of success on the merits. Specifically, the court held that the distributor rightfully owned the trademark over plaintiff because:  (1) defendant created the mark;  (2) plaintiff had used the mark solely in connection with defendant until their relationship ended;  (3) defendant bore the responsibility of maintaining product quality;  and (4) nothing in the labels, which were created by defendant, indicated that plaintiff was the licensor of the trademark itself. Id. at 439. Similarly, nothing in the advertising or product labeling that Sunjut has done in the last eight years indicated that the SUNPACK mark was owned by Sunjut. The mark was never used by Sunjut and was used by Dry in purchase orders, advertising, and trade shows in connection with the Dry Enterprises company name only. Sunjut did not have a prior right in the SUNPACK mark and, because it has never used the mark in commerce, acquired no goodwill. Sunjut's current website does not even refer to the SUNPACK mark and Sunjut's President, Metin Levi, has stated that Sunjut has

-13-

no intention of ever using the mark, even on invoices. Consequently, Dry—not Sunjut—has been viewed as the source for SUNPACK FIBCs for eight years.

Similar cases involving maker-distributor ownership disputes Dry's ownership of the SUNPACK word and design trademarks. Dry Dry possesses the goodwill associated with SUNPACK FIBCs due to its dedicated efforts and creativity of Preston Dry and Steven Dry.

### 2. Sunjut Has No Protectable Rights in the SUNPACK Mark

Sunjut does not have any protectable rights in the SUNPACK mark. First, the mark was not used when first adopted by Sunjut, and only acquired trademark significance through Dry's marketing, advertising and sales activities over the past eight years. That makes Dry the senior user and owner of the mark. *See* McCarthy, §§ 15:04 and 16:34. 18. Second, Sunjut has lost any rights that it may have once had through uncontrolled licensing of the mark. Dry has acquired significant goodwill in the mark without any restrictions or controls being placed on it by Sunjut at any time regarding the scope or form of Dry's trademark usage. Sunjut did not attempt to place controls on Dry's usage of the mark because Sunjut knew the mark was not its to control.

### a. Only Dry's Efforts Gave the Mark Distinctiveness

The Turkish registration does not confer a presumption of ownership as to the word SUNPACK, since that term was disclaimed. That term was disclaimed because Sunjut decided to stick with its Sunjut name when it first began to sell its FIBCs in the United States marketplace. Over the years, the SUNPACK trademark has acquired distinctiveness through Dry's use of the mark in the sale of FIBCs. Dry has invested thousands of its own dollars to build the goodwill surrounding the SUNPACK mark, and the mark now has acquired considerable distinctiveness in reference to Dry and the FIBCs it sells.

### b. Sunjut Long Ago Abandoned Any Rights It May Have Had in the Mark Through Uncontrolled or "Naked" Licensing

If Sunjut ever had any trademark rights in SUNPACK, it lost those rights long ago through uncontrolled licensing. Sunjut allowed Dry to build significant goodwill in the mark, to the point that the purchasing public now associates the mark with Dry. It is well-established that uncontrolled or "naked" licensing may result in the trademark ceasing to function as a symbol of controlled source. See Barcamerica Int'l USA Trust v. Tyfield Importers, Inc., 289 F.3d 589, 596 (9th Cir. 2002); McCarthy § 18:48. When "a trademark owner engages in naked licensing, without any control over the quality of goods produced by the licensee, such a practice is

-14-

inherently deceptive and constitutes abandonment of any rights to the trademark by the licensor." First Interstate Bancorp v. Stenquist, 16 U.S.P.Q.2d (BNA) 1704, 1706 (N.D.Cal. 1990). Such abandonment "is purely an 'involuntary' forfeiture of trademark rights," for it need not be shown that the trademark owner had any subjective intent to abandon the mark. McCarthy § 18:48.

Sunjut has exercised no control over Dry's use of the SUNPACK mark. In fact, Dry sells FIBCs from other manufacturers under the SUNPACK name. (Dry Dec. ¶). Even though Sunjut knew about Dry's practice, it did nothing. (Dry Dec. ¶). Sunjut did not require Dry to give attribution to Sunjut, nor did it require prior approval over public uses of the mark. The only thing Sunjut did was to file a trademark application in the year 2007 (for the SUNPACK name) in an attempt to create the appearance that it owned the mark. Thus, even assuming arguendo that Sunjut once had trademark rights in SUNPACK (a supposition that is unsupported by the record), it lost those rights through uncontrolled licensing of the mark.

DATED: June 15, 2007                                Respectfully submitted,

                                                   DRY ENTERPRISES, INC., SUNPACK
                                                   PACIFIC, LLC, STEVEN E. DRY, PRESTON
                                                   DRY, AND HAKAN HAZNECI,

                                                   By /s/Frank A. Bear
                                                                One of their Attorneys


Daniel F. Lanciloti
Frank A. Bear
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000

CH1 11246239.4