IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DRY ENTERPRISES, INC., et al., )<br>)<br>      **Plaintiff,** )<br>vs. )<br>)<br>SUNJUT AS, et al., )<br>)<br>      **Defendants.** )<br>)<br>SUNJUT AS, et al. )<br>)<br>      **Counter-Plaintiffs,** )<br>)<br>vs. )<br>)<br>STEVEN E. DRY, et al. )<br>)<br>      **Counter-Defendants.**) | No. 07 C 1657<br><br>**Judge Kendall**<br><br>**Magistrate Judge Cole** |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS COUNT VII OF DEFENDANTS SUNJUT AS, SUN-PACK CORPORATION,
METIN LEVI, FIDAN LABBE AND TUNCER ERKTOLAR**

  Count VII asserts a claim in tort for defamation under Illinois law. The basis for defamation liability is a particular publication, not a course of conduct or state of mind. Plaintiffs alleged certain publications by identified individual defendants, and these were reviewed individually for legal sufficiency in Defendants' supporting memorandum.

  **I. GENERAL ALLEGATIONS STANDING ALONE ARE LEGALLY INSUFFICIENT**

  Plaintiffs argue in opposition to Defendants' Rule 12(b)(6) motion (Response, at 11-12) and in response to Patriquin's and Cinar's motions to dismiss that broad, blunderbuss assertions of defamation by unspecified "Defendants" (e.g., Complaint, ¶¶78, 91, 92, 102, 107) standing alone, state a claim for defamation by each Defendant separately.

  These are the allegations on which Count VII is based:

> 151. Defendants have made multiple false and defamatory statements of fact about Sunpack Pacific, Dry Enterprises, Steven Dry and Hazneci as fully set forth in paragraphs 72-102 of this Complaint.
>
> 152. Among other things, Defendants have falsely stated that Sunpack Pacific, Dry Enterprises, Steven Dry and Hazneci have acted unlawfully towards Sunjut A.S., and that Steven Dry and Hazneci have stolen from Sunjut A.S., and that Steven Dry and Hazneci have acted for greed or for personal benefit against Sunjut A.S. as fully set forth in paragraphs 72-102 of this Complaint.
>
> 153. Defendants have also falsely stated that Sunpack Pacific is attempting to divert business from Sunjut A.S. to Sunpack Pacific, when in reality, Sunjut A.S. and Sunjut U.S.A. are attempting to divert customers from Sunpack Pacific.
>
> 154. Defendants have made these false and defamatory statements to Sunpack Pacific's and Dry Enterprises' customers and suppliers via written email correspondence and via telephone. At all times, Defendants knew that these statements were false or with a high degree of awareness that the same were probably false, or with reckless disregard for the truth.

Complaint, ¶¶151-154, at 27-28.

As The Court of Appeals observed in *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007):

> In *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court wrote that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...."*Id.* at 1964-65 (citations omitted).

Here, it is impossible to know who any particular defendant allegedly contacted, what was allegedly said, when the communication allegedly took place, and which of the alleged false statements described (acting unlawfully, stealing, being greedy, or attempting to divert business) it is claimed were made by that defendant. It is also impossible to know whether the unidentified statements relied upon by Plaintiffs are susceptible of an innocent construction.

6290306v1 876159

Where the basis for the action is as amorphous and undefined as this, even the cases Plaintiffs cite conclude that the allegations are insufficient to state a claim for defamation:

> Numerous courts in this district have applied a *haec verba* pleading requirement in defamation actions under which a complainant must set forth the alleged defamatory words that were spoken or published. *See. e.g., Cozzi v. Pepsi-Cola General Bottlers, Inc.,* No. 96 C 7228, 1997 WL 312048, at *5 (N.D.Ill. June 6, 1997); *Silk v. City of Chicago,* No. 95 C 0143, 1996 WL 312074 (N.D.Ill. June 7, 1996)."The rationale of the [haec verba] requirement is that 'general knowledge of the exact language used is necessary to form a responsive pleading." ' *Cozzi,* 1997 WL 312048, at *5 (quoting *Vantassell-Matin v. Nelson,* 741 F.Supp. 698, 707 (N.D.Ill.1990)). Courts applying this requirement, however, have held that the defamatory language need not be quoted verbatim. *Id.* Rather, an allegation is sufficiently specific if it allows the defendant to understand the nature of the claim and form a responsive pleading. *Socorro v. IMI Data Search, Inc.,* No. 02 C 8120, 2003 WL 1964269, at *3 (N.D.Ill. April 28, 2003) (citing *Wynne v. Stevenson,* No. 02 C 5263, 2002 WL 31804497, at *2 (N.D.Ill.Dec.13, 2002)).
>
> *Wilton Partners III v. Gallagher,* 2003 WL 22880834, at *5 (N.D. Ill.)

In *Wilton Partners,* a case relied upon by Plaintiffs, the allegations bore some resemblance to those made in this case:

> [D]efendants 'knowingly and intentionally made false statements about Tim Gallagher and FEPC' to third parties, including, but not limited to, CVS Corporation, the Village of Arlington Heights, CB Richard Ellis, Trapani Companies, Leonardo Companies, Jos. Freed Associates, and Corrigan and Clark. According to the amended counterclaim and third party complaint:
>
>> Among other things, [counter-and third party defendants] advised one or more of the above-referenced entities that Gallagher and FEPC were engaged in illegal or wrongful conduct; misappropriated or stole information belonging to Wilton; misrepresented themselves in proposals to one or more of the above-referenced entities or were otherwise lacking in business integrity.
>
> *Wilton Partners,* at *2-3.

The court in *Wilton Partners* granted a motion to dismiss and required the Plaintiff in that case to set forth the actual content of the alleged defamatory statements, the context in

which they were allegedly made and the identities of the speakers and the individuals to whom they were made. *Id.,* at 6. These particulars are required here, too.

A review of the decisions cited by Plaintiffs reveals that in each case, the allegations were either found to be insufficient (*Wilton Partners*) or were accepted because they were far more informative than the general allegations here. In *Chisholm v. Foothill Capital Corp.*, 940 F.Supp. 1273, 1284 (N.D. Ill. 1996), the defendant was alleged to have told business associates that Plaintiff was fired for "double-dealing" between his former employer and a company her husband controlled. In *Guy v. State of Illinois,* 958 F.Supp. 1300, 1312 (N.D. Ill. 1997), the Defendant was alleged to have told co-workers about the events leading to her termination, and to have issued press releases about her termination asserting that it was for professional incompetence. In *Landmark Document Services, LLC v. Omega Litigation Solutions, LLC*, 2006 WL 2861098 at *3 (N.D.Ill.), the decision rested on the fact that the complaint alleged defamatory statements of incompetence and described the third parties to whom they were made; the only basis of the motion was that the timing of the statements was not provided.

That Plaintiffs had no difficulty in identifying a number of specific communications allegedly made suggests two possibilities with respect to communications not specifically alleged in the Complaint. One, that Plaintiffs' investigation has revealed no evidence of any specific statements other than those cited, or two, that Plaintiffs wish to avoid testing such statements for whether they constitute defamation.

Plaintiffs' claims depend upon showing that specific defamatory communications are actionable, as is illustrated by all of the decisions resolving the question. For example, in *Naeemullah v. Citicorp Services, Inc.,* 78 F.Supp.2d 783, 790-92 (N.D. Ill. 2001), the court reviewed nine defamatory statements and various republications of them to decide the question.

Thus the communication-by-communication review in Plaintiffs' supporting Memorandum of Law is the appropriate approach to these claims.

Plaintiffs also list twenty of the paragraphs to which the defamation count refers, Response, at 3, and challenge Defendants' supposed failure to address them. Examination of the paragraphs reveals that they allege no additional defamatory statements. None identifies a statement overlooked by the motion and supporting Memorandum of Law. It is the *publication* of defamatory statements, not the context, that forms the basis for a defamation action.

Nor was it "gamesmanship" for Defendants to address the specific allegations against Yasemine Cinar and Tuncer Erktolar as if they formed part of the basis for Count VII. For reasons not made clear, Count VII incorporated them by reference, Complaint, ¶150, at 27. They were the only statements by these defendants contained in the Complaint. In the case of Defendant Erktolar, the statement is alleged to have been "false and defamatory." (Complaint, ¶104) Moreover, while the Response to this motion takes Defendants to task for addressing those allegations, Response, at 3, n. 1, the response to the Cinar motion to dismiss actually contends that the allegations do support a claim for defamation.

## II. NO STATEMENTS OF LACK OF ABILITY OR MISCONDUCT IN PERFORMING SERVICES

Plaintiffs provide no analysis of criminal law to support their assertion of defamation *per se*. Instead, they rely principally upon the two "trade or profession" forms of defamation *per se*. This reliance is misplaced because those exceptions do not provide that any unflattering comment about them that is somehow related to their trade is actionable. The line of demarcation is spelled out in *Cody v. Harris,* 409 F.3d 853, 857-58 (7th Cir. 2005), decided long after the *Bryson* decision on which they primarily rely. Cody was said to have lacked the

integrity and judgment to resist taking revenge on his employer by making improper website postings. The Seventh Circuit found no defamation, and explained the conclusion this way:

> Statements that have been deemed defamatory *per se* by Illinois courts under the third and/or fourth categories have always been related to job performance; to succeed, the plaintiff must have been accused of lacking ability in his trade or doing something bad in the course of carrying out his job. See *Clarage v. Kuzma,* 342 Ill.App.3d 573, 276 Ill.Dec. 995, 795 N.E.2d 348, 356 (2003); *Parker v. House O'Lite Corp.*, 324 Ill.App.3d 1014, 258 Ill.Dec. 304, 756 N.E.2d 286, 296 (2001). For example, in Parker, the plaintiff, whose job was drafting lighting specifications for a new hospital, was accused of rigging the specifications so that only his brother-in-law would be able to get the job. *Parker*, 258 Ill.Dec. 304, 756 N.E.2d at 292. This alleged "want of integrity" was in performing the plaintiff's duties of employment, and the court stated that it constituted defamation per se. Id. at 296. *Clarage* presented a similar situation: a property developer was accused of lying to officials in the course of a resort development deal, and the accusation was deemed to constitute defamation per se. *Clarage*, 276 Ill.Dec. 995, 795 N.E.2d at 356. The court pointed out that the plaintiff was not accused of lying to family and friends, but rather to government officials with whom it was his job to communicate honestly. See *Id*.
>
> Conversely, attacks related to personal integrity and character have not been deemed defamatory *per se*. See *Heying v. Simonaitis*, 126 Ill.App.3d 157, 81 Ill.Dec. 335, 466 N.E.2d 1137, 1143 (1984). In *Heying*, the court held that statements made by doctors regarding personality conflicts between the plaintiff nurse and her fellow employees did not impugn her ability as a nurse. *Id*. In another case discussed by both Cody and the defendants, the plaintiff's former employer told a prospective employer that the plaintiff had been terminated because he made calls to 1-900 numbers while on the job; although this accusation might have damaged the plaintiff's personal reputation, and might well have hurt his chances for getting the new job, it was not deemed defamatory per se because it did not disparage the plaintiff's skills as a manager. See *Sangston v. Ridge Country Club*, 1992 WL 317138, at *4 (N.D.Ill. Oct.29, 1992).

Because the remarks about the Plaintiff "did not disparage Cody's skills as a sales manager, but were critical of his personal integrity," *Id.,* they were not defamation *per se*. This holding from the Court of Appeals on the governing Illinois law dooms Plaintiffs' assertions that they come within the defamation *per se* categories they claim, as will be evident from the review below.

### III. THE SPECIFIC COMMUNICATIONS ALLEGED ARE NOT ACTIONABLE

#### A. First Statement: Assertion That Sunpack Pacific Is Part of Sunjut

This communication to a Chinese supplier, the particulars of which are alleged in paragraphs 79 and 80, is claimed (¶81) to be defamatory because it says that "Sunjut made a company called Sunjut Pacific and allowed Hakan and a USA sales rep, Steve Dry, to become partners in it." Paragraph 81 asserts that the falsehood is that Sunjut Pacific LLC[1] was a separate company from Sunjut A.S. The recipients of the e-mail are alleged to be Chinese suppliers to Sunjut Pacific LLC. The response to the motion does not explain how the alleged inaccuracy could be defamatory in character.

#### B. Second Statement: Not Acting In Accordance With Our Concept of Ethics

The Complaint (¶82) cites a statement from the same e-mail message that Plaintiffs had "been caught not acting in accordance with our partnership and our concepts of ethics." Plaintiffs cite no authority on point, relying only on a general direction from the Illinois Supreme Court not to strain to alter the meaning of words used. They do not answer the authority cited by Defendants, *Gardner v. Senior Living Sys., Inc.*, 731 N.E.2d 350, 355 (1st Dist. 2000), holding that calling someone "unethical" cannot reasonably be construed to state verifiable facts.

Here, the reference to "ethics" is specifically qualified, referring only to the *author's* standards of ethics, making it an opinion statement, *Marczak v. Drexel National Bank,* 542 N.E.2d 787, 790 (Ill.App. 1st Dist. 1989)(that employee "did not live up to the high standards expected of officers of the bank" was not defamatory). The statement asserts that Plaintiffs did not live up to an agreement, which is not so morally reprehensible as to justify presuming

---

[1] The Complaint uses the name "Sunpack Pacific LLC" as a defined term. This entity was named Sunjut Pacific LLC until January 5, 2007 (Complaint ¶ xx)

damages, *American Needle & Novelty, Inc. v. Drew,* 820 F.Supp. 1072, 1075-76 (N.D. Ill. 1993). As the communication discloses and Plaintiffs allege (Complaint, ¶89), the business relationship between the author and Plaintiffs was being severed. The reasonable construction is that the author believed that Plaintiffs had not lived up to their agreement and viewed this as being unethical. At most, this was an opinion and not an assertion of facts.

In *Knafel v. Chicago Sun-Times,* 413 F.3d 637, 639-40 (7th Cir. 2005), where a comment about the plaintiff's conduct implied she was a prostitute, the court found an innocent construction because a reasonable person could interpret the statement as merely suggesting that the plaintiff was being mercenary after an affair. Here, the statement of disappointment in the conduct of erstwhile partners came in the context of a pitch to continue doing business through Sunjut rather than Plaintiffs. It can at worst be construed as personal disapproval and disappointment about the conduct of a business partner.

C. **Third Statement: Desire to Continue Use of Sunjut Name Would Be "Stealing"**

The Complaint (¶84) cites a letter to another Chinese supplier stating: "Although they do not act as a Sunjut group member, they want to continue using the name Sunjut. This is called stealing. I will fight them in the hardest way. Their greed has blinded them." The Complaint also says Plaintiffs had kicked Sunjut out of Sunjut Pacific LLC (Complaint, ¶89).

This is in no sense an accusation that Plaintiffs are thieves; it is classic hyperbole expressing the author's dissatisfaction with those who would "want to continue" to use a name after their relationship with the name's owner has been severed. A *desire* to retain one's name under such circumstances, the only verifiable fact here, fits into none of the categories of *per se* defamation. Facts that are not defamatory do not become defamatory because an opinion or hyperbole describing the conduct as criminal comes with it. *Greenbelt Co-op Pub. Ass'n v.*

*Bressler*, 398 U.S. 6, 14, 90 S.Ct. 1537, 1542 (1970) ("blackmail" characterization not defamatory). Plaintiffs allegation that the use of the name was originally approved by Sunjut (Complaint, ¶85) misses the point of the assertion, which is specifically focused on Plaintiffs' desire to continue using the name.

### D. Fourth Statement: Plaintiffs' Customers Were Defendants' Customers

This same letter is alleged to be defamatory because identifies customers of Plaintiffs as being Defendants' customers and refers to them as having been introduced to the supplier "under the Sunjut umbrella." (Complaint, ¶86) Defendants argued that this statement simply emphasizes the importance to the author of loyalty to Sunjut. Plaintiffs' response does not explain how this statement could be considered defamatory.

### E. Fifth Statement: Converting Bags From Sunjut to China Company

Plaintiffs quote a statement by Defendant Fidan Labbe that "Steve has opened a company of his own in China, without permission has converted many bags from Sunjut to this company of his." (Complaint, ¶93) Exhibit A to Defendants Memorandum of Law in support of the motion, which contains the full communication, was submitted to the court, Document No. 20-2. As noted in Defendants' supporting Memorandum, at 11, the context of the actual e-mail message itself places this comment in a different light from the isolated fragment quoted in the Complaint.

The message begins by saying that the customer's purchase order was incorrectly sent to Steve Dry when it should have gone to the other sales representative, John Marks. It confirms that Defendants split the customer's business between Dry and Marks. It *then* states that Dry has "opened his own company in China, without permission had converted many bags

from Sunjut to this company of his." More important, it goes on to express only one concern: that the bags ordered were "special" and had historically been manufactured by Sunjut Turkey.

Plaintiffs' argument is that the words "converted" and "without permission" can only be read to impute improper conduct. To the contrary, nothing in the message suggests that Dry *needed* Sunjut's permission to open a company in China or to supply bags from his own company. The message is not clear about whether the lack of permission refers to the opening of the company in China or the conversion of bags from a source in Turkey to one in China. A reasonable person reading this message would take away only that the customer should not blame Sunjut for either the China company or the conversion of bags from Sunjut to Chinese bags.

Nor does the legal meaning of "convert" (the tort of conversion, which suggests the taking and carrying away of the property of another) necessarily connote wrongful conduct. The Complaint itself reflects that the intent of the parties in forming Sunjut Pacific LLC was to obtain a lower cost source for FIBC's. (Complaint, ¶¶46-54) The word "convert" more reasonably refers to converting the customer's source of supply from one origination point to another. If the intention was to accuse Dry of some reprehensible conduct, this sentence could not be expected to be subordinate to the obvious purpose of the message: to avoid confusion or disappointment of the customer resulting from the order being faxed to the wrong fax number. There is no assertion that Sunjut is sufficiently offended by the conduct to cease doing business with Dry, no criticism of the conduct, no plea to the customer not to cooperate or continue to work with Dry .

Even reading the alleged communication to assert specific, verifiable facts, it does not accuse Plaintiffs of a crime, such as in *Republic Tobacco Co. v. North Atlantic Trading Co.*,

381 F.3d 730, 717 (7th Cir. 2004)(allegation of improper defacing of competitor's merchandise and thereby conducting business in violation of trademark and patent laws held to be defamatory) because taken as a whole, the communication does not represent an accusation of morally reprehensible conduct. Plaintiffs have identified no criminal statute that would be violated by the alleged conduct. To the extent that the behavior cited reflects a lack of personal integrity, it falls outside the "trade or profession" *per se* categories because it does not concern fitness to perform services. *Cody v. Harris,* 409 F.3d 853, 857-58 (7th Cir. 2005). *See also e.g., American Needle & Novelty, Inc. v. Drew,* 820 F.Supp. 1072, 1075-76 (N.D. Ill. 1993)(plaintiff guilty of deliberate breach of terms and conditions of agreement and agreement terminated); *Uline , Inc. v. JIT Packaging, Inc.* 437 F.Supp.2d 793, 803-4 (N.D. Ill. 2006)(Plaintiff has or is about to have financial problems)

  F. **Sixth Statement: Former Sales Representative Engaging In Competition**

Paragraphs 95-96 contend that it was false and defamatory for Defendant Levi to state in an e-mail to this same customer that Dry had been, but was no longer, a sales representative and that he was "now apparently attempting to divert business from Sunjut/Sunpack to [Plaintiff company]." The claim of defamatory material is based on the assertion that Dry was not a sales representative and that the customer was Dry's customer, not Sunjut's. (Complaint, ¶96)

Plaintiffs assert that Defendants have not challenged the sufficiency of paragraph 95 (Response, at 7). Yet Plaintiffs specifically acknowledge that paragraph 96—which Defendants *did* identify and attack (Memorandum of Law in support of the motion, at 11-12) identifies what it is about paragraph 95 that is allegedly actionable (Response, at 8).

There is nothing in the Complaint or the Response indicating why being a sales representative for Sunjut would be criminal or otherwise within the scope of statements actionable *per se.* Nor is there anything explaining how it would be improper about a *former* sales representative "attempting to divert" his former company's business to his own new company. This is ordinary business conduct, lawful in the abstract.[2] Those are the only assertions contained in the communication that are claimed to have been defamatory.

## G. Seventh Statement: Shipment Ready, Invoices On Sunjut Letterhead

Defendant Patriquin is named as a defendant in this lawsuit solely because she sent an e-mail message to a different customer stating that its shipment had arrived and that all invoices would be on Sunjut letterhead from now on. (Complaint, ¶¶98-99) A simple notification, regardless of the customer's alleged defensive and inexplicably offended response, is not defamation. Patriquin's Reply in Support of her motion to dismiss is incorporated by reference.

## H. Eighth Statement: Send Payments Directly To Sunjut

Defendant Erktolar is named as a defendant in this lawsuit solely because he contacted a customer to say that the customer should send payments directly to Sunjut. (Complaint, ¶¶103-4) This was the historical practice (Complaint, ¶ xx) This cannot by any stretch of the imagination be construed as a statement commenting or reflecting on the character of any Plaintiff. Plaintiffs contend that this constitutes a statement that Dry no longer maintained control or responsibility over the customer's orders. According to the Response, not only can this assertion be teased out of the statement, but it is the only reasonable construction that can

---

[2] It is possible that such conduct could breach a duty of loyalty or obedience, but this would not render the statement defamatory *per se* under the *Cody* analysis set forth above. More important, there is no assertion here that there was a duty to refrain from competition or that pre-termination violation of the duty of loyalty had taken place. As *American Needle & Novelty, Inc. v. Drew,* 820 F.Supp. 1072, 1075-76 (N.D. Ill. 1993) illustrates, an assertion of failure to abide by obligations under an agreement is not defamatory *per se.*

be put on the statement. Plaintiffs cite no case in which a direction about where to send payment (or any other direction of any kind) has ever been found to be actionable defamation. In *Davis v. John Crane, Inc.* 633 N.E.2d 929, 938 (Ill.App. 1st Dist. 1994), the court found no defamation when plaintiff was escorted off the premises publicly and his personal belongings searched by a security guard, *citing Dubrovin v. Marshall Fields & Co.,* 536 N.E.2d 800 (Ill.App. 1st Dist. 1989). These cases present a far more compelling basis for claiming defamation than a simple direction about remittance address.

Moreover, Plaintiffs assert that the implication of the statement "tarnishes a business's reputation and imputes a lack of professional competence." (Response, at 10) Plaintiffs do not explain how this could be so. In fact, significantly more direct and critical comments have routinely been held not to constitute defamation, *e.g., Drury v. Sanofi-Synthelabs, Inc.,* 292 F.Supp.2d 1068, 1070-71 (N.D. Ill. 2003)(allegation that plaintiff was a "cancer' on co-workers not actionable); *Doherty v. Kahn,* 682 N.E.2d 163, 172 (Ill.App. 1st Dist. 1997)(accusation that plaintiff was lazy, incompetent and could not do his job not defamatory *per se*).

### I.     Ninth Statement: Branch Office Not To Cooperate With Dry

Defendant Cinar is named as a defendant in this lawsuit solely because she allegedly "contacted Sunjut A.S.'s branch offices in Europe to tell them to no longer provide assistance to Dry Enterprises or Hazneci." (Complaint, ¶105) Cinar is alleged to be the "Sales Director for Sunjut A.S." (Complaint, ¶13) No argument is advanced for how this alleged action could represent a defamatory communication; indeed, it is not even alleged to have been defamatory.

### IV.     NO LIBEL *PER QUOD*

Tellingly, the Complaint fails to identify a single specific loss that resulting from any of the alleged defamatory communications. Plaintiffs do not respond to the contention in the

supporting Memorandum of Law, at 4, that there is no allegation tying any specific defamatory publication to an alleged loss of sales. Rule 9(g) requires that if an item of special damages is claimed, it must be specifically stated, and there is no such itemization. Thus, no claim of libel *per quod* has been sufficiently alleged here.

## V. CONCLUSION

The claim for defamation in Count VII is legally unfounded. Count VII fails to state a claim for which relief may be granted and should be dismissed.

Dated: March 4, 2008

>Respectfully submitted,
>
>HINSHAW & CULBERTSON LLP
>
>By: s/Michael J. Leech
>    Michael J. Leech

Michael J. Leech
Kourtney A. Mulcahy
Evan D. Brown
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to Local Rule 5.5, service of the foregoing was accomplished upon all Filing Users pursuant to the Court's Electronic Case Filing system on March 4, 2008.

/s/Michael J. Leech

6290306v1 876159