IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DRY ENTERPRISES, INC., an Illinois corporation; SUNPACK PACIFIC, LLC, a Delaware limited liability company; STEVEN E. DRY, and individual; and HAKAN HAZNECI, an individual, <br><br> Plaintiff, <br> v. <br><br> SUNJUT AS, a Turkish corporation; SUN-PACK CORPORATION d/b/a SUNJUT CORPORATION, an Illinois corporation; METIN LEVI, an individual; FIDAN LABBE, an individual; YASEMIN CINAR, an individual; KARRIE PATRIQUIN, an individual; and TUNCER ERTOKLAR, an individual, <br><br> Defendant. | Case No. 07 C 1657 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Dry Enterprises, Inc. ("Dry Enterprises"), Sunpack Pacific, LLC ("Sunpack Pacific"), Steven E. Dry ("Steven Dry") and Hakan Hazneci ("Hazneci") (collectively "Dry") bring this action against Defendants Sunjut A.S., Sun-Pack Corporation ("Sun-Pack"), Metin Levi ("Levi"), Fidan Labbe ("Labbe"), Yasemin Cinar ("Cinar"), Karrie Patriquin ("Patriquin") and Tuncer Ertoklar ("Ertoklar") alleging violations of the Electronic Communications Privacy Act, the Stored Communications Act, the Computer Fraud and Abuse Act, breach of contract, tortious interference with prospective economic advantage, tortious interference with contract and defamation. Sunjut A.S., Sun-Pack, Levi, Labbe, and Ertoklar move to dismiss Plaintiff's

defamation claim, and Cinar and Patriquin move to dismiss Plaintiffs defamation, tortious interference with contract, and tortious interference with prospective economic advantage claims.

## STATEMENT OF FACTS

At the motion to dismiss stage, all of the plaintiffs' allegations are accepted as true. Pursuant to orally agreed upon terms and conditions, Dry Enterprises has, for the past several years, purchased flexible intermediate bulk containers ("FIBCs") from Sunjut U.S.A. and Sunjut A.S. (collectively "Sunjut"). Cmplt. at ¶39. FIBCs are a typle of storage bag used in international shipping that aids in preserving the product during shipping. Dry Enterprises received orders from customers, purchased the FIBCS from Sunjut U.S.A., and Sunjut A.S. sent the FIBCs directly to Dry Enterprises' customers. *Id*. at ¶¶40-44. Sunjut U.S.A. then paid Dry its margin on the sales each month. *Id*. at ¶45. By 2001, Dry became interested in purchasing FIBCs manufactured in Asia at lower prices. *Id*. at ¶48. To this end, once Steven Dry and Hazneci located a suitable Chinese manufacturer, Sunjut became interested in the opportunity. *Id*. at ¶¶51-52. In August 2004, Dry, Hazneci, and Sunjut A.S. formed a limited liability company known as Sunjut Pacific, LLC, which on January 27, 2007 changed its name to Sunpack Pacific, LLC ("Sunpack Pacific"). *Id*. at ¶52. Sunpack Pacific was designed to purchase and sell and distribute FIBCs manufactured in Asia to customers all over the world. *Id*. at ¶54.

According to Sunpack Pacific's Operating Agreement, Sunjut A.S. was required to contribute technology valued at $150,000, and Sunpack Pacific paid Sunjut U.S.A. a commission on all bags delivered to the United States from manufacturers in China. *Id*. at ¶¶56, 59. Both Dry Enterprises and Sunjut U.S.A. became customers of Sunpack Pacific. *Id*. at ¶¶57-58.

After the formation of Sunpack Pacific, the parties' business relationship began to

deteriorate. *Id*. at ¶63. On or about October 27, 2006, Steven Dry discovered that someone had altered his email settings such that all his emails were immediately forwarded to Levi, the managing director of Sunjut A.S. and president of Sunjut U.S.A. *Id*. at ¶64. Neither Levi nor anyone at Sunjut was authorized to access Steven Dry's email account, and Steven Dry believes that Levi, or someone else at his direction, altered the settings so that Levi could receive Steven Dry's proprietary information concerning the business of Dry Enterprises and Sunpack Pacific. *Id*. at ¶¶65-66.

On January 18, 2007, Patriquin, Sunjut's customer service representative, informed Sunpack Pacific that from that point forward Sunjut would require Dry to attach its customers' original purchase orders when ordering FIBCs and releasing them from the warehouse and that Sunjut would no longer accept a purchase order that displayed the Sunpack name and logo. *Id*. at ¶68. In response, on January 19, 2007, Dry Enterprises informed Patriquin that it would purchase FIBCs directly and use its own warehouse and freight and thus would no longer need Sunjut's services to store or ship FIBCs or bill customers. *Id*. at ¶70. The same day, Levi confirmed the changes and stated that Sunjut would no longer bill Dry's customers on invoices displaying the Sunpack name and logo. *Id*. at ¶71. Although Sunjut U.S.A. had stated that the new terms would apply only to new orders, on March 16, 2007, it stated that it would not ship the outstanding orders as previously agreed. *Id*. at ¶72.

Sunjut A.S. then failed to provide Sunpack Pacific with the technology required by the Operating Agreement, and Sunjut U.S.A. failed to pay Sunpack Pacific for products purchased. *Id*. at ¶¶73-74. Sunjut A.S. also set up a joint venture and then another Chinese manufacturing plant, both of which competed with Sunpack Pacific. *Id*. at ¶¶75-77.

Levi also began defaming Sunpack Pacific, Steven Dry, Dry Enterprises, and Hazneci to

3

customers and suppliers in order to harm their business reputations and divert their customers. *Id*. at ¶78. Specifically, Levi sent an email to two Chinese manufacturing partners of Sunpack Pacific stating in part that Dry and Hazneci were being fired by Sunjut for acting unethically. *Id*. at ¶¶79-80. Levi also noted that all business agreements would remain the same, but the contact person would change. *Id*. Dry asserts that these statements are false and that Levi and Sunjut knew the manufacturers had a business relationship with Sunpack Pacific, Dry, and Hazneci when they made the statements. *Id*. at ¶¶81-83.

Levi also sent a letter to SuperPacking, another supplier of Sunpack Pacific, falsely stating that Sunjut's lawyers were attempting to force Sunpack Pacific to stop using the Sunjut name, accusing Sunpack Pacific of stealing the name, and claiming that "their greed has blinded them. *Id*. at ¶¶84-85. Levi also encouraged Superpacking to refuse to support Sunpack Pacific regarding customers introduced under the Sunjut umbrella. *Id*. at ¶86.

Following these actions, Sunpack Pacific's lawyers sent a cease and desist letter to Levi and Sunjut. *Id*. at ¶88. On January 5, 2007, Sunpack Pacific adopted a resolution declaring failure of consideration by Sunjut A.S. and thus declaring that it was never a member of Sunpack Pacific. *Id*. at ¶89. Levi and Sunjut, however, continued to make defamatory statements about Sunpack Pacific and Dry to their manufacturers and customers in order to harm Dry and Sunpack Pacific and divert their customers. *Id*. at ¶¶91-97. Specifically, on February 21, 2007, Labbe sent a letter to a Dry Enterprises customer stating that "Steve has opened his own company in China, without permission has converted many bags from Sunjut to this company of his." *Id*. at ¶93.

In addition, Patriquin, at Sunjut U.S.A.'s direction, sent an email to a Dry Enterprises customer "informing them that their shipment had arrived and that all invoices would be on Sunjut

4

letterhead from now on." *Id*. at ¶98. The customer responded that its contract was with Dry Enterprises and that it did not want to be pulled into the middle of a dispute. *Id*. Similarly, Ertoklar, a customer service representative contacted a Sunpack Pacific customer to state that it should send payments directly to Sunjut U.S.A.'s offices, and Cinar contacted Sunjut A.S.'s Europe branch offices and told them not to provide assistance to Dry Enterprises or Hazneci. *Id*. a¶t 104-105.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

## DISCUSSION

### General Allegations of Defamation

Dry makes several general allegations of defamation against all the Defendants. Specifically, Dry alleges:

- "On numerous occasions, Levi made false and defamatory statements to Sunpack Pacific's Chinese Suppliers, SunPack Pacific's customers, and to Dry Enterprises' customers in order to cause harm to the business and reputations of Sunpack Pacific, Dry Enterprises, Steven Dry, and Hazneci, and to divert the customers of Dry Enterprises and Sunpack Pacific to

5

Sunjut A.S., Sunjut U.S.A. and Sunjut China." Cmplt. at ¶ 78.

- "Sunjut A.S. and Levi continue to make false and defamatory statements to Sunpack Pacific's suppliers and customer . . . ." *Id*. at ¶ 91.

- "Sunjut A.S., Sunjut U.S.A., Levi, and Labbe, both individually and as agents of their respective companies, and at Levi's direction, also made false and defamatory statements to Dry Enterprises' customers and Sunpack Pacific's customers in order to harm Dry Enterprises' and Sunpack Pacific's business relationships, to divert those customers from Sunpack Pacific and Dry Enterprises to Sunjut A.S., Sunjut U.S.A., and/or Sunjut China, and to cause harm to the character and reputation of Steven Dry and Hazneci." *Id*. at ¶92.

- "On information and belief, Sunjut A.S., Sunjut U.S.A., Levi, or other employees or agents acting at their direction have also made false and defamatory statements to these ten customers regarding Sunpack Pacific, Dry Enterprises, Steven Dry, or Hazneci." *Id*. at ¶102.

- "Sunjut U.S.A., Sunjut A.S., Levi, Labbe, Patriquin, and Ertoklar continue to make these false and defamatory statements in an effort to cause harm to the business of Dry Enterprises and Sunpack Pacific, as well as cause harm to the character and reputation of Steven Dry and Hazneci, and to interfere Dry Enterprises and Sunpack Pacific's customers and suppliers and in order to divert that business to Sunjut A.S., Sunjut U.S.A., and/or Sunjut China [sic]." *Id*. at ¶107.

Claims of defamation are subject to specific pleading requirements. The Seventh Circuit has not spoken as to the exact pleading standard for claims of defamation. Some courts have required Plaintiffs to specifically state the words alleged to be actionable to meet pleading standards. *See*, *e.g.*, *Woodward v. Am. Family Mut. Ins. Co.*, 950 F.Supp. 1382, 1388 (N.D.Ill. 1997); *Seaphus v. Lilly*, 691 F.Supp. 127, 134 (N.D.Ill. 1988). However, the alleged defamatory statements need not be alleged verbatim. *See*, *e.g.*, *Flentye v. Kathrein*, 485 F. Supp.2d 903, 919 (N.D.Ill. 2007); *Chisolm v. Foothill Capital Corp.*, 940 F.Supp. 1273, 1284 (N.D.Ill. 1996). The rationale behind this pleading requirement is that "general knowledge of the exact language used is necessary to form responsive pleadings." *Chisolm*, 940 F. Supp at 1284 *citing Vantassell-Matin v. Nelson*, 741 F.Supp. 698, 708 (N.D.Ill. 1990). Thus, "an allegation is sufficiently specific if it allows the defendant to

understand the nature of the claim and form a responsive pleading." *Wilton Partners III LLC v. Gallagher*, No. 03 C 1519, 2003 U.S. Dist. LEXIS 21899, at *16 (N.D.Ill. Dec. 2, 2003) *citing Soccorro v. IMI Data Search, Inc.*, No. 02 C 8120, 2003 U.S. Dist. LEXIS 7400 (N.D.Ill. April 28, 2003).

Nonetheless, courts require some level of detail in defamation pleadings, and Dry's general allegations of defamation cannot survive a Motion to Dismiss. Notably, courts have dismissed claims of defamation when given much more detail than Dry provides in his general allegations. For example, in *Wilton Partners*, the plaintiffs alleged in their complaint that defendants "advised one or more of the above-referenced entities that Gallagher and FEPC were engaged in illegal or wrongful conduct; misappropriated or stole information belonging to Wilton; misrepresented themselves in proposals to one or more of the above-referenced entities or were otherwise lacking in business integrity." 2003 U.S. Dist. LEXIS 21899 at *16-17, (N.D.Ill. Dec. 2, 2003). The court directed the plaintiff to amend the complaint and add more detail to the context and content of the statements, noting that "without greater detail regarding the alleged defamatory statements, the court is unable to determine the precise context in which they were made and whether they are indeed capable of innocent construction." *Id*.

Similarly, in *Cozzi v. Pepsi-Cola General Bottlers, Inc.*, the plaintiff alleged that defendant "black-balled" plaintiff to prospective employers and made accusations and caused the circulation of rumors among plaintiff's former colleagues, friends, and prospective employers that all of her assets were frozen, her assets at her home were seized, her motor vehicles were impounded, she was taken from her home in handcuffs, and she misappropriated money from her prior employer. No. 95 C 3648, 1997 U.S. Dist. LEXIS 7755, at *18 (N.D.Ill June 2, 1997). The plaintiff was ordered

7

to supplement her allegations because she did not provide "the dates, the names of the speakers or recipients, nor the context in which any of the alleged defamatory statements were made." *Id*. at 18-19; *see also Wynne v. Stevenson*, No. 02 C 5263, 2002 WL 31804497, at * 2 (N.D.Ill. Dec. 12, 2002) (allegations of "false and malicious statements" regarding Wynne's lack of "truthfulness and honesty" insufficient).

Dry's allegations amount to a statement that one member of a list of entities said something defamatory about a Plaintiff to another of a list of entities with no context or content. They are insufficiently pleaded and thus dismissed. As Dry does not argue that any specifically listed statements made by Cinar are defamatory, her Motion to Dismiss Count VII is granted.

### Specific Defamatory Statements

Dry also specifically describes several allegedly defamatory statements. Under Illinois law, a preliminary determination as to whether allegedly defamatory statements are actionable is a question of law to be decided by the Court. *Action Repair, Inc. V. Am. Broadcasting Co., Inc.*, 776 F.2d 143, 145 (7th Cir. 1985). In order to state a claim for defamation under Illinois law, "a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006) *citing Krasinski v. United Parcel Serv., Inc.*, 530 N.E.2d 468, 472 (1988). A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him. *Solaia*, 852 N.E.2d at 839 *citing Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 206 (1992).

"Some statements are considered defamatory *per se* because they are so obviously and

8

materially harmful to a plaintiff that his injury may be presumed." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) *citing Bryson v. New Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (1996). There are five such categories of statements under Illinois law: "(1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those imputing a lack of ability, or that prejudice a party in his trade, profession, or business; and (5) those imputing adultery or fornication." *Cody*, 409 F.3d at 857 citing *Bryson v. New Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214-15 (1996).

Even if a statement falls into one of these categories, it is not actionable *per se* if it is reasonably susceptible to an innocent construction. *Knafel v. Chicago Sun-Times, Inc.*, 413 F.3d 637, 639-40 (7thCir. 2005). "A written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable." *Tuite v. Corbitt*, 866 N.E.2d 114, 123 (Ill. 2006) *citing Chapski v. Copley Pres*, 442 N.E.2d 195, 199 (Ill. 1982). "Whether a statement is reasonably susceptible to innocent interpretation is a question of law for the court to decide." *Knafel*, 413 F.3d at 640.

**Defamatory Statements Attributed to Levi**

In their Motion to Dismiss, Defendants deal individually with various alleged defamatory statements attributable to Levi. In some cases, they parse out segments of an overall defamatory communication. "The legal effect of a statement should be considered in the context of the entire Memorandum, rather than independently." *Darovec Mktg. Group, Inc. V. Bio-Genics, Inc.*, 42

F.Supp.2d 810, 816-17 (N.D.Ill. 1999) citing *Bryson v. New Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1216 (Ill. 1996). Overall, the Parties address three separate "incidents" of defamation.

*November 1, 2006 Email from Levi to Sunpack Pacific's Manufacturing Partner in China*

Dry alleges that Levi sent an email to Changzhou Ssangleong, one of Sunpack Pacific's manufacturing partners in China on November 1, 2006. Cmplt. at ¶ 79. In the email, Levi discusses the decline of Sunjut's relationship with Dry and Hazneci. *Id*. In the following paragraphs, Dry specifically notes that two statements from that email are false and defamatory. *Id*. at ¶¶ 81-82. First, Dry notes that Sunpack Pacific is a separate company from Sunjut A.S., not a part of Sunjut as suggested by the email. Second, Dry states that Levi's statement that "Hakan and his partner been [sic] caught not acting in accordance with out [sic] partnership and our consepts [sic] of ethics. After numerous warnings and given opportunities to correct themselves, Sunjut is not successful to salvage this relationship," noting that it was Sunjut that repeatedly violated its duties pursuant to the agreement. Defendants argue in their Motion to Dismiss that neither of the noted statements are defamatory, arguing that the first statement does not harm the reputation of the Plaintiffs, and the second is an opinion.

The assertion that Sunjut Pacific is not a separate entity from Sunjut A.S. is subject to an innocent construction and thus not defamation *per se*. *See Tuite*, 866 N.E.2d at 123. Levi's statement that Dry and Hazneci were not acting "in accordance with our partnership and concepts of ethics," taken alone, is also not defamatory because it is an opinion. *See Flentye*, 485 F.Supp.2d at 920 (statement that plaintiff "lacks an ethical compass" is an opinion); *Gardner v. Senior Living Systems, Inc.*, 731 N.E.2d 350, 355 (Ill.App. 2000) (calling a plaintiff "unethical" is an opinion). However, "mixed expressions of fact and opinion may be actionable." *Flentye*, 485 F.Supp.2d at

10

920 *citing Bogosian v. Board of Educ. Of Cmty Unit Sch. Dist. 200*, 134 F.Supp.2d 952, 957 (N.D.Ill. 2001).

The fact that these two excerpts, standing alone, are not defamation *per se* is largely immaterial because the email in its entirety, and certainly some individual statements within the email, are defamation *per se*. The email states that Dry and Hazneci have violated the partnership agreement and that Sunjut is going to sue them. Cmplt. at ¶79. These statements impute that Dry exhibits a lack of ability in his profession. *Cody*, 409 F.3d at 857; *See also*, *Chisolm*, 940 F.Supp. at 1284-85 (accusation of "double dealing" concerned plaintiff's "professional competance and integrity"); *Quality Granite Const. Co., Inc. V. Hurst-Rosche Engineers, Inc.*, 632 N.E.2d 1139, 1143 (Ill.App.Ct. 1994) (letter alleging that Quality Granite defaulted on a contract "accused Quality of both an inability to perform and a lack of ability in its contractual undertaking). These allegations strike at the core of the business relationship, alleging that either Dry is incapable of performing under the contract or that he has no integrity in that performance. As such, the statements are defamatory *per se* and Count VII is not dismissed.

### *Letter from Levi to Superpacking*

Dry also alleges that Levi wrote a to Superpacking, a Chinese manufacturing partner of Sunpack Pacific, stating, "Today our lawyers are attaching [sic] SJP [Sunpack Pacific] to force them to stop using the name Sunjut. They are resisting this request. Although they do not act as a Sunjut group member, they want to continue using the name Sunjut without permission. This is called stealing. I will fight them in the hardest way. Their greed has blinded them. It is a shame but they are no longer my friends or collaborators. You need to know." Cmplt. at ¶ 84.

Levi's statement that "their greed has blinded them," is an opinion. *See*, *e.g.*, *Solaia*, 852 N.E.2d at 841 (plaintiffs are a "deeply greedy people"). However, the statement as a whole is defamatory *per se* because it accuses Plaintiffs of a want of integrity in the discharge of their duties of office. *Cody*, 409 F.3d at 857; *See also Darovec*, 42 F.Supp.2d at 817; *Chisolm*, 940 F.Supp. At 1284-85; *Solaia*, 852, N.E.2d at 841-42. Specifically, Levi accuses Steven Dry of using a name he does not have permission to use such that Sunjut is taking legal action against them.

Levi also wrote in the letter that "[w]e will not and cannot forbid you to work with Hakan however you should not support them regarding customers that were introduced under the Sunjut umbrella." Cmplt. at ¶ 86. This statement adds to the defamatory character of the letter in that it makes clear that other statements are intended to deter Superpacking from associated with Hakan. *See*, *Muzikowski*,... However, it does not constitute defamation in itself. Under Illinoi law, a defamatory statement must be about a plaintiff. *See*, *e.g.*, *Solaia*, 852 N.E.2d at 839. Also, "the allegedly defamatory statement must contain an objectively verifiable factual assertion." *Lifton v. Board of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005). This statement is neither about the Plaintiffs, nor does it assert any facts. Instead, it is a suggestion regarding Superpacking's future dealings with the Plaintiffs. Thus, it is not defamatory, much less defamatory *per se*.

*February 2007 Email from Levi to a Dry Enterprises Customer*

Lastly, in February of 2007, Levi sent an email to a Dry Enterprises customer stating, "for some time, Steve Dry, through Dry Enterprises, Inc., was a sales representative of Sunjut who assisted with Sunpack's US sales. However, Steve Dry and Dry Enterprises are no longer sales representatives for Sunjut or Sunpack. Nevertheless, it has recently come to our attention that Mr. Steve Dry has begun to conduct business through his own venture, a Delaware company known as

'SunPack Pacific, LLC,' and is now apparently attempting to divert business from Sunjut/Sunpack to his company." Cmplt. at ¶ 95. This entire statement can be construed to state simply that Dry broke from Sunjut, started his own business, and is now competing in the industry. Thus, it is subject to an innocent construction and is not defamatory *per se*. *See, e.g.*, *Tuite v. Corbitt*, 866 N.E.2d at 123.[1]

Still, although some of the individual statements addressed by Defendants, as discussed above, are not defamatory per se, some of the statements are defamatory *per se*. Thus, although Dry cannot rely on the statements held to be nondefamatory to support his claim, he has adequately alleged defamation, and Levi's Motion to Dismiss Count VII is denied.

**Defamatory Statement Attributed to Patriquin**

Dry alleges that Patriquin "sent an email to one of Dry Enterprises' customers informing them that their shipment had arrived and that all invoices would be on Sunjut letterhead from now on" on March 1, 2007 and that this statement constituted defamation. Cmplt. ¶¶98-99. This

---

[1]Plaintiffs may argue that some statements found not to be defamation *per se* are instead defamation *per quod*. Such an action is appropriate "where the defamatory character of the statement is not apparent on its face, and resort to extrinsic circumstances is necessary to demonstrate its injurious meaning." *Bryson*, 672 N.E.2d at 1221. In order to plead defamation *per quod*, a plaintiff must plead special damages, that is, actual damage resulting from the statement. *Id*. at 1222. Here, Plaintiffs state only that "plaintiffs have also suffered special damages in the form of financial loss resulting from the effect of Defendants' statements, relating to, among other things customers and goodwill. Cmplt. at ¶158. "When items of special damage are claimed, they shall be specifically stated." Fed.R.Civ.P. 9(g). Plaintiff does not adequately plead special damages. *See e.g.*, *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 270 (7th Cir. 1983) (plaintiffs claim that they were "likely to suffer injury as a result of the natural tendency of the defendants' false and malicious statements to undermine Brown & Williamson's reputation for honesty and decrease its sales" insufficient); *Gros v. Midland Credit Mgmt.*, 525 F.Supp.2d 1019, 1027-28 (N.D.Ill. 2007) (plaintiff's allegations that he suffered "out-of-pocket expenses, loss of time, aggravation, and inconvenience and emotional distress" as well as damages to credit insufficient); *Morton Grove Pharm., Inc. V. Nat'l Pediculosis Assn., Inc.*, 494 F.Supp.2d 934, 941 (N.D.Ill. 2007) (plaintiffs allegation that their sales decreased approximately 23% following defamation sufficient).

statement is not defamatory because it is not about or concerning a Plaintiff. *See*, *e.g.*, *Solaia*, 852 N.E.2d at 839. Patriquin's Motion to Dismiss is therefore granted as to defamation.

**Defamatory Statement Attributed to Labbe**

Dry alleges that Labbe sent an email to a Dry Enterprises customer on February 21, 2007 stating that "Steve [Dry] has opened his own company in China, without permission has converted many bags from Sunjut to this company of his." Cmplt. at ¶ 93. This statement accuses Dry of stealing bags from Sunjut for use in his new company. Thus, it accuses Dry of "doing something bad in the course of carrying out his job" and is defamatory *per se*, and Labbe's Motion to Dismiss is denied.[2] *See Cody*, 409 F.3d at 857; *Republic Tobacco Co. V. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 730 (7th Cir. 2004) *citing Haynes v Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1226 (7thCir. 1993) ("Illinois Courts . . .have been quick to find implication of criminal conduct or of employee or business misconduct in statements that might have seemed susceptible of an interpretation that would have taken them out of the *per se* categories").

**Defamatory Statement Attributed to Erktolar**

Dry alleges that "Erktolar, a customer service representative for Sunjut U.S.A. and at Sunjut U.S.A.'s direction, contacted a Sunpack Pacific customer to state that this customer should send payments for FIBCs directly to Sunjut U.S.A.'s offices." Cmplt. ¶ 103. As with Patriquin's statement, this is not a statement about a plaintiff and thus does not constitute defamation. *Solaia*, 852 N.E.2d at 839. Ertoklar's Motion to Dismiss Count VII is granted.

## Tortious Interference

Cinar and Patriquin move to dismiss Plaintiffs allegations of tortious interference with

---

[2]Dry includes a copy of the email containing these statements with their response. This Court does not consider anything outside of the Complaint in its decision.

contractual relations and tortious interference with prospective economic advantage. Under Illinois law, the elements of tortious interference with contractual relations are: (1) existence of a contract; (2) defendant's awareness of the contract; (3) intentional inducement of a contract breach; (4) actual breach of the contract; and (5) damages. *Cody*, 409 F.3d at 859 *citing HPI Health Care Servs., Inc. V. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989). Similarly, the elements of tortious interference with prospective economic advantage are (1) a reasonable expectation of a future business relationship; (2) defendant's knowledge of that expectation; (3) defendant's purposeful interference by the defendant that prevents the legitimate expectation from becoming a valid business relationship; (4) and damages. *Cody*, 409 F.3d at 859 *citing Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991).

**Tortious Interference Allegations Against Cinar**

Plaintiffs allege that Cinar is liable for tortious interference because she "contacted Sunjut A.S.'s branch offices in Europe to tell them to no longer provide assistance to Dry Enterprises or Haznecki." Cmplt. ¶105. However, to state a cause of action for tortious interference under Illinois law, a plaintiff must allege "a business expectancy with a specific third party as well as action by the defendant directed towards that third party." *Ali*, 481 F.3d at 945-46 *citing Assoc. Underwriters of Am. Agency, Inc. V. McCarthy*, 826 N.E.2d 1160, 1169 (Ill.App. 2005). Here, Cinar contacted branch offices of her employer, Sunjut. Because Cinar did not have contact with a third party, her Motion to Dismiss is granted as to tortious interference with contractual relations and tortious interference with prospective business relations.

**Tortious Interference Allegations Against Patriquin**

Dry alleges that Patriquin, "sent an email to one of Dry Enterprises' customers informing

15

them that their shipment had arrived and that all invoices would be on Sunjut letterhead from now on. This prompted the customer to respond to Patriquin that its contract was with Dry Enterprises, and expresses frustration about being pulled into a dispute between Sunjut and Dry Enterprises, and that its was presumptuous to assume that the shipment belonged to the customer." Cmplt. ¶ 99. Patriquin took this action to harm Dry Enterprises and divert a customer to Sunjut. *Id*. at ¶ 99. Later, Dry alleges that as a result of such acts by Defendants, Dry lost some customers, and others ordered less FIBCs from Dry then they had in the past. *Id*. at 134. Also, Dry asserts that some customers have terminated their contracts. *Id*. at 143. Plaintiffs have adequately alleged a claim against Patriquin. Patriquin's Motion to Dismiss is denied as to tortious interference with prospective economic advantage and tortious interference with contract.

For the reasons stated above, the Motions to Dismiss Count VII are granted as to Ertoklar, Cinar, and Patriquin with leave to replead with specificity by April 14, 2008 and denied as to Sunjut A.S., Sun-Pack Corporation, Levi, and Labbe. Cinar's Motion to Dismiss Counts V and VII is granted with prejudice, and Patriquin's Motion to Dismiss Counts V and VII is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: March 31, 2008